**Ted R. TROUTMAN, Individually and as Settlor of the Troutman Trust, Relator,**

v.

**The Honorable Charles R. RAMSAY, Judge 22nd District Court, Caldwell County, Respondent**

No. 03–97–00009–CV.

Court of Appeals of Texas, Austin.

Oct. 30, 1997.

*State,* 523 S.W.2d 700, 703 (Tex.Crim.App.1975); *Williams v. State,* 937 S.W.2d 23, 28–29 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).

JONES, Justice.

In 1996, Jay Scott Troutman (Scott) sued his father Ted Troutman (Ted), as settlor of the Troutman Trust, and his uncle Charles Troutman, as trustee of the Troutman Trust. The petition sought, in part, a declaratory judgment that certain parcels of land belong to Scott and his brother, Ronald, in fee simple. Ted moved to disqualify Scott's attorney, George Dunn, on the ground that Dunn had previously represented Ted in a related matter. After a hearing, the trial court refused to disqualify Dunn. Ted petitions this Court for a writ of mandamus, contending that because the previous representation and the current representation are substantially related, Dunn must be disqualified. We will conditionally issue the writ of mandamus.

### FACTUAL AND PROCEDURAL BACKGROUND

George Dunn was hired in 1990 by Ted Troutman to probate the will and handle the estate of Ted's deceased wife, Jeanne. Dunn's fees were paid by Ted, although all of Dunn's contact was with Scott and Scott's wife. In October 1990, Scott and his brother signed a quitclaim deed to a 4–acre tract of property, excepting a 2.37–acre tract which had been conveyed to Scott in 1978. Scott and Ronald executed the quitclaim deed because they believed the property belonged to their father and mother, although it had once been part of a trust created for the benefit of the two brothers. The quitclaim deed was prepared by Dunn for the purpose of facilitating the probate of Jeanne Troutman's estate.

After the estate was settled, Dunn occasionally worked for the Troutmans individually, both father and son; in 1992 he prepared a will for Ted, and, in late 1994 or early 1995, he represented Scott in another proceeding. In late 1995, Scott discovered documents that led him to believe the property for which the quitclaim had been executed was in fact part of an irrevocable trust, and thus had belonged to him and his brother, not Ted and Jeanne. In 1996, Scott filed suit against Ted in the District Court of Caldwell County, with Dunn signing the petition as Scott's attorney. One of the requests

Pamela Stanton Baron, Austin, William W. McNeal, McNeal, Garner & Lippe, P.L.L.C., Lockhart, for Relator.

Todd A. Blomerth, Blomerth & Payne, George T. Dunn, Robert A. Hatcher, Lockhart, for respondent.

Before POWERS, JONES and KIDD, JJ.

contained in the petition was that the court declare Scott and Ronald to be the fee simple owners of the property that was included in the quitclaim deed they signed in 1990. Alleging that the quitclaim was solicited by fraud or mistake, the lawsuit asked the court to find and declare the deed to be void, having no effect as to any transfer of title. After the trial court refused to disqualify Dunn as Scott's attorney, Ted filed the present petition for writ of mandamus.

## DISCUSSION

Mandamus is appropriate only if it can be shown that the district court clearly abused its discretion and there is no adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 842 (Tex.1992). Appeal is not an adequate remedy for an improper failure to disqualify. *National Medical Enters., Inc. v. Godbey,* 924 S.W.2d 123, 133 (Tex.1996). Accordingly, the issue here is whether the failure to disqualify Dunn constituted an abuse of discretion. A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). This Court may not reverse for abuse of discretion merely because we disagree with a decision of the trial court. *Buller,* 806 S.W.2d at 226; *Downer,* 701 S.W.2d at 242.

An attorney should not accept representation adverse to a former client if such representation deals with matters substantially related to the factual matters involved in the former representation. *See* Tex. Disciplinary R. Prof. Conduct 1.09(a)(3) (State Bar Rules art. X, § 9). The party seeking disqualification must prove the prior existence of an attorney-client relationship that involved factual matters so related to the matters in the present litigation that there is a "genuine threat that confidences revealed to [the] counsel will be divulged to [the] present adversary." *NCNB Tex. Nat'l Bank v. Coker,* 765 S.W.2d 398, 400 (Tex.1989). Once the moving party has met this burden,

an irrebuttable presumption arises that confidences were revealed to the attorney. *Id.* The justification for this presumption is simple: without it, a former client would be placed in the position of having to reveal confidences disclosed to his former attorney in order to demonstrate that such confidences exist. *Id.* Once the presumption is in effect, the trial judge should disqualify the attorney, not because the attorney is presumed to have violated the former client's confidentiality, but as an exercise on the part of the trial court of its role in the "internal regulation of the legal profession." *Id.*

Ted Troutman has met the burden necessary to bring the presumption into effect. An attorney-client relationship previously existed between Ted and Dunn. Dunn admitted at the disqualification hearing that during the probating of Jeanne's will he considered Ted a client. Although Dunn also stated that he considered the estate his client, and at one point said that both Scott and Ted were his clients, Ted, as executor of the estate, paid Dunn's fees.

The factual matters involved in Dunn's prior representation of Ted are substantially related to the factual matters in the current case, in which Dunn represents Scott adversely to Ted. Scott's petition seeks to have the court declare void any interest transferred by the very quitclaim deed Dunn prepared and Scott signed as part of the estate settlement. This part of Scott's case involves the disposition of the very same subject matter—the property named in the quitclaim—that was involved in Dunn's previous representation of Ted.

At the hearing on disqualification, Scott presented evidence showing that there was never any opportunity for Ted to impart confidential information to Dunn. This evidence is irrelevant to the question of the propriety of Dunn's representation of Scott adversely to Ted in a substantially related matter. Again, when a substantial relation is found between the two representations, the trial court should disqualify the attorney as part of its "role in the internal regulation of the legal profession." *Coker,* 765 S.W.2d. at 400. The purpose of this rule is to protect the previous client from being put in the

"catch–22" position of revealing secrets in court to demonstrate that the attorney was privy to the client's confidences. *See id.*[1]

## CONCLUSION

We conclude that the issues in Dunn's representation of Scott Troutman against Ted Troutman are substantially related to Dunn's prior representation of Ted Troutman. The trial court therefore abused its discretion in failing to disqualify Dunn in the present case. We are confident Judge Ramsay will disqualify Dunn from representing Scott Troutman in this case, and mandamus shall issue directing such disqualification only upon his failure to do so.

---

1. Considering the purpose of the rule, it is also apparent that Scott misreads the significance of *Metropolitan Life Insurance Co. v. Syntek Finance Corp.*, 881 S.W.2d 319 (Tex.1994). In *Syntek* the court noted that evidence had been introduced showing that all the information at issue in the case was available to the public. *Id.* at 321. Scott misconstrues this as an exception to the "substantially related" presumption. The *Syntek* opinion does not create such an exception; the paragraph detailing the evidence about the public nature of the relevant information also describes the trial court's other actions in determining how to rule on the disqualification of the law firm involved, including an in camera review of documents involved in the prior representation. The court in *Syntek* was simply demonstrating that the trial judge did not abuse his discretion in finding the absence of a substantial relationship between the two representations.